## Asa F. Lawrence, Administrator *vs.* Caleb Rice.

In an action against a sheriff for the default of A., his deputy, the declaration averred that the plaintiff recovered judgment against M., and took out execution thereon, and delivered it to said A. ; that goods and real estate were attached on the original writ, by F., another deputy sheriff, and were held by him to satisfy said execution ; yet that A. neglected to levy the execution on the real estate attached, and to seize and sell the goods attached, and to return the execution : The agreed facts in the case were, that the execution was sent to F. after he was out of office, and he delivered it to A. within thirty days after said judgment was rendered, and informed him that the goods, which F. attached on the original

Lawrence, Administrator *v.* Rice.

writ, were delivered to O., who gave a receipt for them, and redelivered them to M., the debtor, who afterwards sold them; that F. and A. went to O.'s house, and A. demanded of him the attached goods for which he had given a receipt; that F. then delivered the receipt to A., on the back of which O. had written and signed an acknowledgment that A. had demanded of him the goods therein mentioned; that A. accepted said receipt, and that O. promised to pay the amount in a short time, but afterwards became insolvent; that A. had no knowledge of the attachment of the real estate of M. within thirty days after said judgment was rendered, that, before the expiration of that time, M. had alienated said estate; that no instructions were ever given to F. or A. to levy on real estate, or in what manner to collect the execution; and that A. never returned the execution into the clerk's office, but enclosed it in a letter, directed and sent by mail either to the clerk or to the creditor's attorney.

*Held,* that A. was not guilty of any default, for which an action could be maintained against the sheriff, besides that of not returning the execution, and that, for A.'s default in not returning the execution, the sheriff was liable to nominal damages.

THIS was an action of trespass upon the case against the sheriff of Hampden, for the default of Daniel M. Moore, one of his deputies, in not obtaining satisfaction of the execution mentioned in the next preceding case, (*ante,* 527,) and for not returning the same.

The declaration in the case, and the facts agreed upon by the parties, sufficiently appear in the opinion of the court, delivered by

SHAW, C. J.   This action against the sheriff was commenced during the pendency of the next preceding action to recover damages for the loss of the same execution, on the ground of misfeasance and neglect of the defendant's deputy, Daniel M. Moore.   A plea in abatement was filed, at a former stage of the cause, on the ground of the pendency of said next preceding action, for the same cause of action, which plea was overruled; and on judgment of *respondeat ouster,* the general issue was pleaded.   The cause now comes before the court, upon an agreed statement, embracing substantially the same facts presented in the former case.

In this action, it is very clear that the plaintiff can recover only by showing some misfeasance or nonfeasance, on the part of the defendant's deputy, Moore; and this must be averred in the declaration, and such averment must be supported by proof.   It becomes necessary, therefore, in the first place, to examine the declaration, to ascertain what default is charged

The declaration, after setting out all the preliminary facts, as in the former action, viz. a recovery of judgment by Parker against Nathaniel B. Moseley, and the issuing of an execution thereon, proceeds to aver that the said Parker, the creditor, in his life time, delivered said execution to Daniel M. Moore, deputy, &c. to be duly executed and returned according to the command therein. It then avers that, on the original writ, the goods, chattels and lands of said Moseley were attached at said Springfield, and held to satisfy said execution, by Wm. H. Foster, a deputy sheriff under said Rice; yet that said Moore neglected to levy said execution on the real estate attached, and to seize and sell the personal property attached, and to return the same execution, as therein commanded.

Unless these specific averments of neglect, or some of them, are established by the facts agreed, the plaintiff cannot recover.

In the first place, it is not true, as averred, that the intestate, in his life time, delivered the execution to Moore, if it intends that he did it personally. If he avails himself of the act of Foster in delivering the execution to Moore, then he makes Foster his agent for that purpose, and is bound by all the facts communicated to him by Foster, and by any instructions, if any, which Foster gave to Moore upon the occasion.

The first ground of neglect relied upon is, that Moore did not levy upon the land attached. To this there are several answers. It will be remembered that the original writ, in this case, was returned to the distant county of Middlesex, and that the officer's return was on record there. In the agreed statement of facts, we find that " Moore had no knowledge of the attachment of real estate on the original writ, and was not apprised of it within thirty days after the said judgment was rendered; " and before the expiration of that time it was alienated by the debtor. But further; the statute gives the creditor an election to have his execution levied on real estate, or not; and if he does so elect, he is to direct the officer, and the officer is bound to follow such

direction. Rev. Sts. *c.* 97, § 16. It is stated among the facts agreed to by the parties in this case, that " no instructions were ever given to said Foster, or to said Moore, to levy on real estate, or sell an equity of redemption, or in what manner to collect the execution." Having no direction, and no knowledge of the attachment of real estate, Moore is chargeable with no default on that ground.

The next ground of the plaintiff's charge is, that Moore, the deputy, did not take the personal property, which had been attached, to satisfy the execution. It appears that the only notice, which Moore had, that any goods had been attached, was given him by Foster, who informed him, at the same time, that they were not in his custody, but that he had delivered them to J. O. Moseley, and taken his receipt for them. No goods, therefore, subject to the lien created by the attachment, were to be found with Foster, or could be specifically taken by Moore. He then, accompanied by Foster, went to the receipter, to demand the goods of him. He having been employed as the actual substitute and keeper of the goods under the attaching officer, they might still have been considered to be in the custody of the law, with the lien on them preserved ; and then it would be his duty to take them. But the receipter had them not, and of course the deputy could not obtain them. But it now appears, by the facts agreed, that at the time of the attachment on the original writ, the receipt was immediately given, and thereupon the property was returned to the debtor, to be held and used as before. It appears to us, therefore, that according to a well established rule of law, if any attachment was ever made, or any lien created thereby, it was discharged and lost by a redelivery of the property to the debtor. *Robinson* v. *Mansfield*, 13 Pick. 139. *Sanderson* v. *Edwards*, 16 Pick. 144. Nothing, therefore, which the deputy could do or omit to do, could affect the creditor's lien on the attached property, because that lien was already gone.

Indeed, it might be well questioned, on the facts now agreed, whether any such attachment was ever made, as to create a

lien upon any one particular coach, or any specific eight horses, supposing the debtor had more than one coach and eight horses; a fact which appears by the agreed statement. The facts agreed are, that the debtor had a number of coaches and horses, but no particular coach or horses were selected and attached; but that, upon notice of the writ being given to the debtor, he procured his brother to sign a receipt, which he carried to the officer, who accepted it, and returned the attachment. It is very clear that in any suit against the officer, or his principal, the officer would be estopped by his return, which was an official act, to deny such attachment. And so, in any suit against the receipter, he (the receipter) would be estopped to deny the fact of an attachment. But when a question arises between the plaintiff and an officer who is not party or privy to the original attachment and return, and the charge is, that the officer has so neglected his duty as to deprive the plaintiff of an actual lien, it would seem to be open to the officer to show that such lien never in fact existed. But we have not thought it necessary to give a decided opinion on this ground; because we are of opinion, that if any such lien had ever existed, it had been discharged by a redelivery of the property to the debtor before the execution was issued.

If the gravamen of the plaintiff's complaint is, that the defendant's deputy, Moore, did not take the coach and horses, notwithstanding the discharge of the lien, by an original seizure, the answer is decisive, that this he could only do if the property then continued to be the property of N. B. Moseley, the debtor. But the case expressly finds that, before that time, he had sold all the coaches and horses, and parted with the possession of them; so that they were not liable to be taken as his property, on an execution against him. No other property is indicated in the statement of facts, which it is suggested that the officer could take.

Under these circumstances, we are of opinion that the deputy was in no default, in doing or omitting any official act to the injury of the plaintiff. He had no instruction to

take real estate, and no notice that any real estate was liable. So far as he had any notice of personal property attached, he took every measure to obtain it, till he ascertained that the lien was gone, and no personal property remained to the debtor, which could be taken by a new seizure, to satisfy the execution. The only ground, therefore, upon which the plaintiff can complain that he has been damnified by the act of Moore is, that by accepting of Foster the receipt of J. O. Moseley, he indirectly exonerated Foster from his liability in not keeping the attached property. But if the acceptance of this receipt, under the circumstances, was contrary to the interest of the plaintiff, (upon which we give no opinion,) we think it was not an official act, as deputy, for which the sheriff is liable.

Moore was without any instructions from the plaintiff, or any information or knowledge of facts, except through Foster. From him he learned that the attached property had been delivered to J. O. Moseley, under an agreement to keep it, and deliver it on demand, or pay all damages. With this notice, it was his duty to demand the coach and horses of J. O. Moseley, because they might remain in his hands, as in custody of the law ; in which case, they would be subject to the lien. With this, he had done his official duty, and nothing remained but to make his return, without satisfying the execution. In this state of things, the receipt was offered to him. J. O. Moseley acknowledged the demand, admitted his liability, and promised to pay the amount in a short time. The receipt appeared to be valid in law ; it had been taken as a substitute for the goods; and, for aught that appears, would have been available to secure the plaintiff his debt, but for the insolvency of the receipter. In the absence of any instructions from the plaintiff, and with the advice of Foster, he accepted this receipt. This is not set forth in the declaration as a specific misfeasance, by means of which the plaintiff lost his debt. But if it were more specially set out, we are of opinion that it was not a violation of his official duty as an officer, or a misfeasance for which the sheriff is responsible.

The last ground relied upon by the plaintiff is, that the deputy, Moore, has never returned the execution. This is distinctly averred as a default. We are of opinion that the facts agreed sustain the allegation. These facts are, that "the said execution has never been returned to the clerk's office in Middlesex; that said Moore enclosed and mailed it, directed either to the said clerk, or to the present plaintiff, who was then attorney of said Parker," the original attaching creditor. It is not enough that an officer encloses the execution in a letter, directed either to the creditor or to the clerk of the court. It is his duty to make such return, and it was a default not to make it. Although the plaintiff has shown no damage resulting from it, yet he is entitled to recover nominal damages. *Laflin* v. *Willard*, 16 Pick. 64. *Goodnow* v. *Willard*, 5 Met. 517.

*Judgment for nominal damages.*

*R. A. Chapman*, for the plaintiff.

*W. G. Bates & H. Morris*, for the defendant.